## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JANET MASON,**

     **Plaintiff,**

                               **CASE NO.:  8:19-CV-00307-WFJ-**
**vs.**                                **TGW**

**PATHFINDERS FOR**
**INDEPENDENCE, INC., a Florida For**
**Profit Corporation, and BERYL**
**BROWN, Individually,**

     **Defendants.**                    **/**

### PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW
### (Correcting Missing Document from Original Filing)

Plaintiff, JANET MASON ("Plaintiff") hereby moves for summary judgment against Defendants, PATHFINDERS FOR INDEPENDENCE, INC. ("Pathfinders") and BERYL BROWN on three issues: (1) that Plaintiff was an employee of Defendants under the Fair Labor Standards Act, 29. U.S.C. § 201, et. al. ("FLSA"); (2) that Plaintiff is entitled to liquidated damages; and (3) that Defendants' failure to pay Plaintiff overtime wages was willful, such that damages are to be awarded under a three-year statute of limitations.

### SUMMARY OF PLAINTIFF'S ARGUMENT

The undisputed facts in this case show that Defendants willfully misclassified Plaintiff as an Independent Contractor despite a Department of

1

Labor Wage & Hour Division ("DOL") investigation that **occurred during Plaintiff's employment**, finding that Defendants misclassified Plaintiff's precise positions and that Plaintiff is entitled to overtime compensation. The DOL's investigation findings are consistent with similar cases from within the Eleventh Circuit holding that positions such as Plaintiff's are not considered independent contractors. *See Hughes v. Fam. Life Care, Inc.*, 117 F. Supp. 3d 1365 (N.D. Fla. 2015); *Solis v. A± Nursetemps, Inc.*, 2013 WL 1395863 (M.D. Fla. Apr. 5, 2013).

Specifically, here, Pathfinders is a homemaking and companionship service that provides care for developmentally disabled adults. Plaintiff worked for Defendants carrying out these services as a live-in caretaker. She worked full-time for Defendants for three-and-a-half years and was entirely dependent on Defendants for her livelihood. Prior to joining Pathfinders, Plaintiff had no experience or skill in the industry. Defendants provided Plaintiff with all necessary training for her to obtain the required certification and perform capably in her role. Defendants helped get her matched with a client (referred to as a "consumer") and provided Plaintiff with her work schedule. Defendants also set out stringent guidelines, policies, and procedures that Plaintiff was required to follow in carrying out her duties. These undisputed facts support that Plaintiff was an employee of Defendants and should have been paid overtime compensation.

Defendants have long been on notice that Plaintiff was misclassified given the DOL's 2016 investigation that overlapped with Plaintiff's employment. Additionally, Pathfinders has been the subject of **four other prior DOL investigations**, including one involving unpaid overtime compensation, conclusively supporting that Defendants are fully aware of their obligations under the FLSA but willfully failed to pay the required wages. As such, Plaintiff is entitled to unpaid overtime compensation based on a three-year statute of limitations, plus liquidated damages.

**MEMORANDUM OF LAW**

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir.2006) (citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings,

and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See Id.* (citation omitted).

## II.   PLAINTIFF WAS AN EMPLOYEE OF PATHFINDERS

### A.   FLSA Coverage is Established

An employer is covered under the FLSA if either enterprise coverage or individual coverage is established. *See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010). Individual coverage is satisfied if Plaintiff can show she was "(1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 U.S.C. § 207(a)(1) (2005)). When Congress amended the FLSA in 1974, it found that "the employment of persons in domestic service in households affects commerce." 29 U.S.C. § 202(a). The DOL defines "domestic service employment" as "services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed. The term includes employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, **caretakers**, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use." 29 C.F.R. § 552.3 (emphasis added).

Here, it is undisputed that Plaintiff provided care for developmentally disabled individuals in their home. *See* Plaintiff's Statement of Undisputed Material Facts ("SOF") at ¶¶ 2-3, 7-9. As such, Plaintiff comes within the plain meaning of a "domestic service" employee. The DOL reached the same conclusion in their 2016 investigation into Pathfinders' classification of Personal Supports and Supported Living Coaches. *See id.* at ¶ 50. Because FLSA coverage is satisfied here, Plaintiff is entitled to overtime wages if she was an "employee" of Defendants and worked more than forty (40) hours in any given week.

**B.**     **Plaintiff was an "Employee," not an "Independent Contractor."**

Under the FLSA, an "employee" is "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In determining whether an individual is an employee, it is not relevant that one party and/or the other classified the relationship as that of an independent contractor because employees cannot waive their rights under the FLSA or waive their employee status. *See Chapman v. A.S.U.I. Healthcare and Development Center*, 562 Fed. Appx. 182, 184-85 (5th Cir. 2014), *cert. denied* 134 S.Ct. 2733 (2014) (Affirming district court's determination that individuals were employees, rather than independent contractors, in spite of contract stating independent contractor status, because "[neither a defendant's subjective belief

about employment status nor the existence of a contract designating that status is dispositive. Rather, courts look to multiple factors to assess the "economic reality" of whether the plaintiff is so dependent on the alleged employer that she is an employee or is so independent that the plaintiff essentially is in business for herself); *Donovan v. The New Floridian Hotel. Inc.*, 676 F.2d 468, 471 (11th Cir. 1982) (That a business "may not have had the intention to create an employment relationship is irrelevant."); *Daughtrey v. Honeywell. Inc.*, 3 F.3d 1488, 1492-93 (11th Cir. 1993), (The Eleventh Circuit concluded that the district court had relied too heavily on the parties' contract, which described the plaintiff (in an ERISA matter) as an independent contractor, in determining that the plaintiff was not an employee); *Barrentine v. Arkansas–Best Freight Sys*tem, 450 U.S. 728, 739 (1981) (FLSA rights cannot be abridged by contract or otherwise waived); *Molina v. South Florida Exp. Bankserv, Inc.* 420 F. SUpp.2d 1276, FN 26 (M.D. Fla. 2006) (citing *Donovan v. American Airlines, Inc.*, 686 F.2d 267, 269 n. 3 (5th Cir.1982) ("An employee is not permitted to waive employee status.")).

Instead, in determining whether someone is "employed" as per the FLSA, courts apply the "economic realities" test. "This test requires the Court to 'look past the labels the parties apply to their relationship, and to examine both whether Plaintiff's relationship to Defendant is that of a traditional employee and to what extent Plaintiff is economically dependent upon Defendants.'" *Rezendes*

*v. Domenick's Blinds & Decor, Inc.*, 2015 WL 3484835, at *10 (M.D. Fla. June 2, 2015). In assessing economic dependence under the FLSA, the Eleventh Circuit has noted **six** factors to consider:

> (i)   the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (ii)  the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (iii) the alleged employee's investment in equipment or materials required for his task, or his employment of workers
>
> (iv)  whether the service rendered requires a special skill;
>
> (v)   the degree of permanency and duration of the working relationship;
>
> (vi)  the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland v. Jeffrey Knight, Inc.*, 721 F.3d 1308, 1311-12 (11th Cir. 2013).

## 1.     Pathfinders Controlled Plaintiff's Employment.

To determine if an individual is an independent contractor or an employee, courts first consider "the nature and degree of the alleged employer's control as to the manner in which the work is to be performed." *Scantland*, 721 F.3d at 1312. "It is not significant how one 'could have' acted under the contract terms. The controlling economic realities are reflected by the way one actually acts." *Usery v. Pilgrim Equipment Co., Inc.* 527 F.2d 1308, 1312 (5th Cir. 1976).

"Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a *separate* economic entity." *Id.* at 1312-1313. (emphasis added).

In a similar case, *Hughes*, the Northern District of Florida analyzed whether Certified Nursing Assistants ("CNAs") were independent contractors or employees protected by the FLSA. 117 F. Supp. 3d at 1371. The employer was a nurse registry which contracted with government agencies and arranged for CNAs to provide personal care and housekeeping services at a patient's residence, just like here. *See id.* When a government entity referred a patient, FLC would offer the CNA the work. *Id.* The CNA could refuse the work without consequence, was not required to work a minimum number of hours or days, could agree to work only on certain days and not on others, and could refuse to work with certain patients or in a particular county. *Id.* However, the court still held that control favored employee status where the CNA was required to keep an accurate record of time worked, and failure to submit timesheets would result in pay being withheld or forfeited. *Id.* Additionally, the CNAs were subject to an employee handbook that required various policies and procedures to be followed or else the CNA could be terminated. *Id.* In sum, the court found these facts exhibited a significant degree of control over the CNAs. *Id.*

Likewise, here, the undisputed facts show that Pathfinders exercised the requisite degree of control over Plaintiff to establish that she was an employee, and that Plaintiff did not stand as a separate economic entity. As an initial matter, Plaintiff was dependent on Pathfinders for work because Plaintiff was not incorporated and was not licensed as an independent support living provider. *See* SOF at ¶ 10. Because Plaintiff was not licensed, Plaintiff was required to work as a Personal Support / Supported Living Coach through a state certified company, such as Pathfinders. *Id.*

Additionally, Plaintiff did not have control over her work schedule. Plaintiff could only be matched with a consumer if Ms. Brown first determined that Plaintiff would make a good match for that consumer. *See* SOF at ¶ 27. Plaintiff's schedule was then dictated by the consumer's support plan and approved cost plan. *Id.* at ¶¶ 21, 24. Plaintiff also had to keep track of her hours and report her hours to Pathfinders. *Id.* at ¶¶ 22-23. If Plaintiff failed to timely report her hours she would not be paid by Pathfinders. *Id.* at ¶ 22. Moreover, if Plaintiff needed time off she was required to notify Pathfinders in writing at least one week in advance so that Pathfinders could coordinate a replacement while Plaintiff was out. *Id.* at ¶ 25.

Plaintiff also did not have control over the manner in which the work was performed. Plaintiff was provided with an employee handbook and was

required to follow all company policies, standards, and regulations. *Id.* at ¶¶ 14,

16. Among other things, Plaintiff was required to:

> 1.  Send Pathfinders copies of any documents to be sent out on a consumer's behalf, and authorized by Pathfinders' Executive Director, before sending it out,
>
> 2.  Immediately notify Pathfinders of any consumer medication changes and provide supporting documentation,
>
> 3.  Immediately report any medication errors to Pathfinders' Executive Director,
>
> 4.  Seek permission from Pathfinders' Executive Director if a consumer must be left alone,
>
> 5.  Refrain from smoking, and
>
> 6.  Keep her cell-phone on at all times and answer promptly.

*Id.* at ¶ 18. Plaintiff was also required to submit various monthly quarterly, and

annual reports. *Id.* at ¶ 19. Ms. Brown supervised Plaintiff to ensure that all

proper documentation was submitted. *Id.* at ¶ 26. Failure to follow company

policies and procedures would result in Plaintiff's termination. *Id.* at ¶ 17.

Plaintiff anticipates Defendants will argue that Pathfinders did not have

control over the hours of work and manner in which the work was performed

because the state of Florida set guidelines that Pathfinders and its employees are

required to follow, and because Plaintiff's hours are dictated by the client's needs

and not by Pathfinders. However, this argument has previously been rejected by

this Court in a similar case. *See Nursetemps*, 2013 WL 1395863, at *6. In

*Nursetemps*, the employer argued that control was in the hands of the client facility, not Nursetemps. *Id.* This Court held, "[i]n the context of an FLSA examination [ ] this division of control does not help the nurses' independent contractor argument because control of the work does not shift to the nurses, it shifts to another entity (which may thereby become a joint employer, *Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir.1996)) but it does not mean that the nurses thereby become independent contractors." *Id.* In light of the foregoing, it is clear that the control factor clearly favors employee status.

### 2.   Plaintiff's Profit or Loss Was Entirely Dependent Upon Defendant.

"The second factor considers the alleged employee's opportunity for profit or loss depending on his managerial skill." *Scantland*, 721 F.3d at 1316. "The relevant inquiry here is whether [the employee's] opportunity for profit or loss depends more upon [the employer's] provision of work orders and [the employee's] technical skill and efficiency than on her managerial skill." *Hughes*, 117 F. Supp. 3d at 1371 (citing *Scantland*, 721 F.3d at 1316). "In an independent contractor relationship, the independent contractor normally has at least an equal say in the rate to be charged for particular work by bidding on the job or by posting or advertising standard rates for the work to be performed." *Nursetemps*, 2013 WL 1395863, at *6.

Here, Defendant dictated Plaintiff's rate of pay. *See* SOF at ¶ 32. Defendant paid Plaintiff a salary of $1,500.00 per month for her work as Personal Support Staff and an hourly wage of $20.00 per hour for her work as a Supported Living Coach. *See id.* at ¶ 31. As such, Plaintiff's pay is not impacted by managerial skill. Moreover, Plaintiff worked full time for Defendants and for the vast majority of her employment, Plaintiff's hours did not permit her to maintain employment outside of Pathfinders. *Id.* at ¶¶ 29-30. Defendants will likely argue that Defendants did not set the rate of pay – the Agency for Persons with Disabilities set the rate of pay. However, both the *Hughes* court and *Nursetemps* court rejected this same argument. *See Hughes*, 117 F. Supp. 3d at 1371-1372; *Nursetemps*, 2013 WL 1395863, at *6. Accordingly, this factor clearly points to employee status.

### 3.   <u>Plaintiff Did Not Invest in Equipment or Materials.</u>

"The third factor considers the alleged employee's investment in equipment or materials required for his task, or his employment of workers." *Scantland*, 721 F.3d at 1317. "The relevant inquiry here is the extent to which any of [the employee's] work-related expenditures detract from [the employee's] economic dependence on [the employer]." *Hughes*, 117 F. Supp. 3d at 1372 (citing *Scantland*, 721 F.3d at 1317).

Here, Plaintiff required minimal equipment to perform her job. SOF at ¶ 33. And neither party supplied the premises where the work was performed

given Plaintiff worked with the consumer at their home or in the community. *See id.* at ¶ 34. Therefore, at worst, this factor does not tip the scales toward employee status or independent contractor status in any significant way. *See Hughes*, 117 F. Supp. 3d at 1372.

### 4. Plaintiff's Work Did Not Require a Special Skill.

"The fourth factor considers whether the service rendered requires a special skill." *Scantland*, 721 F.3d at 1318. "The relevant inquiry here is whether [the employee] is dependent upon [the employer] to equip her with the skills necessary to perform her job." *Hughes*, 117 F. Supp. 3d at 1372 (citing *Scantland*, 721 F.3d at 1318).

Here, prior to working for Pathfinders, Plaintiff had never worked as a Personal Support, Supported Living Coach, or the like. SOF at ¶ 35. While Plaintiff had to become certified to work in these positions, Pathfinders provided the training and instruction necessary to obtain the required certifications. *Id.* at ¶ 36. Pathfinders also provided Plaintiff with a minimum of 12 hours of "pre-service training" and Plaintiff completed an 18 hour orientation. *Id.* at ¶¶ 37-39. Pathfinders provided other training, such as CPR training, and provided on-the-job training by answering questions and helping Plaintiff understand different mental needs of the clients. *Id.* at ¶¶ 40-41. Given all of this training was provided by Pathfinders, this factor weighs in favor of employee status.

However, even setting these facts aside, the nature of the positions of Personal Support and Supported Living Coach do not, in and of themselves, favor independent contractor status. *See Nursetemps*, 2013 WL 1395863, at *6 (holding that while being a nurse requires highly specialized training and skill it is not necessarily a specialty job in the sense that members of the public do not typically seek them out for private or individual engagements); *see also Crouch v. Guardian Angel Nursing, Inc.*, 2009 WL 3737887, at *16 (M.D. Tenn. Nov. 4, 2009) (while LPNs are skilled in that they must pass an examination administered by the state Board of Nursing and obtain their licensure, they do not have the type of skill reflective of independent contractors which is obtaining their own clients, developing the treatment plan, or budgeting their own time).

### 5.   Plaintiff's Work Was Permanent in Nature.

"The fifth factor considers the degree of permanency and duration of the working relationship." *Scantland*, 721 F.3d at 1318. "The relevant inquiry here is the regularity and length of the working relationship between [the employee] and [the employer]." *Hughes*, 117 F. Supp. 3d at 1373 (citing *Scantland*, 721 F.3d at 1318). Working for the employer for a year or more weighs in favor of employee status. *See Nursetemps*, 2013 WL 1395863, at *7.

Here, Plaintiff worked full time for Pathfinders for over three-and-a half years. *See* SOF at ¶ 6, 42. For three of those years, Plaintiff worked exclusively for

14

Pathfinders, not maintaining **any** outside employment. *See id.* at ¶ 30. This factor weighs heavily in favor of employee status.

### 6.   **Plaintiff's Duties Were Integral to the Nature of Pathfinders' Business Operations.**

"The sixth and final factor considers the extent to which the service rendered is an integral part of the alleged employer's business." *Scantland*, 721 F.3d at 1319. "The relevant inquiry here considers the proportion of [the employer's] business that is performed by [the employee], as well as the degree of control over the [employee] as discussed under the 'control' prong." Hughes, 117 F. Supp. 3d at 1373 (citing *Scantland*, 721 F.3d at 1319).

In *Hughes*, where the employer was in the business of home health care, the court held that the certified nurse assistant "is more than an integral part of [FLC's] business, it is the whole of [FLC's] business." *Id.* (citing *Nursetemps*, 2013 WL 1395863, at *7) (alterations in original). Likewise, here, Pathfinders' business is to provide care for developmentally disabled individuals. *See* SOF at ¶ 2. Their license with Florida's Agency for Healthcare Administration has Pathfinders listed as a "Homemaker and Companionship Service." *Id.* at ¶ 3. Thus, as a Personal Support and Supported Living Coach, Plaintiff provided the **exact work** that Pathfinders contracts with the State of Florida to provide. *See id.* at ¶¶ 2, 8-9. Plaintiff's work is more than an integral part of Pathfinders' business, it is the whole of Pathfinders' business. Defendant agrees. Defendant's Rule 30(b)(6)

corporate representative testified that Defendants' success is sustained by the Personal Supports' and Supported Living Coaches' contributions. *Id.* at ¶ 46. This factor weighs heavily in favor of employee status.

### C. THE DEPARTMENT OF LABOR FOUND THAT PERSONAL SUPPORTS AND SUPPORTED LIVING COACHES ARE EMPLOYEES, NOT INDEPENDENT CONTRACTORS

All six factors enumerated by the Eleventh Circuit in *Scantland* point toward Plaintiff's status as an "employee" rather than an independent contractor. The DOL concurs with this conclusion.

The Supreme Court has recognized, "rulings, interpretations and opinions of the Administrator under [the FLSA], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Courts construing the FLSA frequently rely on Department of Labor rulings, interpretations and opinions in making dispositive findings. *See e.g.*, *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1073 (1st Cir. 1995) (upholding trial court's decision to accept Secretary of Labor's interpretations as persuasive authority); *Bamonte v. City of Mesa*, 598 F.3d 1217, 1228 (9th Cir. 2010) (holding that a DOL opinion letter should be considered in resolving the case); *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1309 (10th Cir. 2011) (relying on DOL interpretive bulletins in resolving the case);

*Baouch v. Werner Enterprises, Inc.*, 908 F.3d 1107, 1112 (8th Cir. 2018) (relying on the DOL Field Operations Handbook as persuasive authority). Indeed, the Eleventh Circuit has held that **courts err** by failing to consider DOL rulings, interpretations and opinions. *See Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1238 (11th Cir. 2002).

Likewise, courts may rely on DOL investigation determinations as persuasive authority where the report's conclusions include sufficient analysis and justification. *See e.g.*, *Corriveau v. City of Maumelle, Arkansas*, 2020 WL 4391368, at *6 (E.D. Ark. May 11, 2020) ("The DOL's determination is a factor that this Court will consider when analyzing whether Ms. Corriveau is entitled to overtime compensation for her one-hour lunch breaks") (emphasis added); *Darden v. Sw. Arkansas Dev., Inc.*, 2017 WL 2189649, at *9 (W.D. Ark. May 17, 2017) ("the Court certainly agrees with Defendant that generally DOL [investigation] findings are entitled to a certain degree of persuasive weight"); *Heady v. U.S. Enrichment Corp.*, 146 F. App'x 766, 772 (6th Cir. 2005) ("Heady also asks this Court to consider the DOL's finding that USEC violated the FMLA. It was within the discretion of the district court to consider an administrative finding in an employment discrimination case.").

Here, on June 6, 2016, the DOL opened an investigation into Pathfinders' classification of the Personal Support Staff (live-in) and Supported Living

17

Coaches – just like Plaintiff, here. *See* SOF at ¶¶ 48-49. The investigation covered the time period of June 16, 2014 to August 29, 2016, which overlaps with Plaintiff's employment. *Id.* at ¶ 48. The DOL found that Pathfinders was covered by the FLSA and that it misclassified Personal Supports and Supported Living Coaches as independent contractors. *See id.* at ¶¶ 50-52. Specifically, The DOL reviewed the *Scantland* factors and made the following findings:

1. ***The work performed was an integral part of the employer's business*** – The workers provided a service to Pathfinders that was a vital part of the company's business. The workers provided the services that Pathfinders contracted to provide.

2. ***The permanency of the worker's relationship with the employer*** – Some of the workers had been providing services to Pathfinders since 2000, evidencing the longevity of the employee/employer relationship.

3. ***The nature and degree of control by the employee*** – All workers reported to and were supervised by Ms. Brown; the workers' rate of pay was set by Ms. Brown; and Ms. Brown could cancel the worker's contract at her discretion. Also employees were required to be trained in a wide variety of areas.

4. ***The worker's skill and initiative*** – Although the workers were trained and possessed the skills necessary to compete in the open market, they were economically dependent on the wages from Pathfinders.

5. ***The relative investments in facilities and equipment by the worker and the employer*** – There was no indication that appears to support the workers had any kind of investment in facilities or equipment.

6. ***Opportunity for Profit or Loss*** – Due to the degree of control exercised by the employer, the workers' effect in for profit or loss was limited.

18

*Id.* at ¶ 51. Based on the foregoing findings, the DOL demanded Pathfinders pay back wages to its Personal Support Staff and Supported Living Coaches. *Id.* at ¶ 54. In accordance with the DOL's investigation findings, this Court should likewise find that Plaintiff here is an employee and **not** an independent contractor.

### D. Beryle Brown is an Individual Employer Under the FLSA and Liable for Any Overtime Compensation Due in this Matter.

The FLSA broadly defines "employer" to "include[ ] any person acting directly or indirectly in the interest of an employer in relation to an employee." *Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx. 839, 844-45 (11th Cir. 2009), quoting 29 U.S.C. § 203(d).  The Eleventh Circuit has "held that the FLSA contemplated that a covered employee may file suit directly against an employer that fails to pay him the statutory wage, or make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F. 3d 1292, 1298 (11th Cir. 2011).  Further, in *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986), the Eleventh Circuit held that to be personally liable as an "employer," a corporate officer "must either be involved in the day-to-day operation <u>or</u> have some direct responsibility for the supervision of the employee."  *Id.* at 638 (emphasis added). "The overwhelming weight of authority

is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.' *Id.* at 637-38 (citing *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)).

In determining whether a corporate officer is an "employer," the Eleventh Circuit has inquired as to whether the officer was involved in the compensation of employees, the hiring or firing of employees, or other matters "in relation to an employee." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1161 (11th Cir. 2008); *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986); *see also* 29 U.S.C. 203(d). Where, as here, the corporate officer was involved in the compensation of employees, the hiring and/or firing of employees and other day to day supervisory decisions regarding employees, the corporate officer is an "employer" within the meaning of the FLSA. *See Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x 839, 845 (11th Cir. 2009).

Here, there is no genuine dispute of any material fact that Ms. Brown satisfies the requirement to be an individual employer under the FLSA. Ms. Brown is the sole owner of Pathfinders and is the company's President/Executive Director. *See* SOF at ¶ 4. Ms. Brown personally interviewed and hired Plaintiff. *Id.* at ¶ 5. Ms. Brown also made the decision to classify Plaintiff as an independent contractor rather than an employee. *Id.* at ¶ 13. Ms.

Brown then decided whether Plaintiff would make a good fit for a prospective consumer, and if Ms. Brown determined she would be a good fit, she would bring Plaintiff to interview with the consumer. *Id.* at ¶ 27.

As Pathfinder's President/Executive Director, Ms. Brown supervised the day to day operations of the business. Plaintiff was required to send Ms. Brown copies of any documents to be sent out on a consumer's behalf to be authorized by Ms. Brown, *id.* at ¶ 18(a); immediately report any medication errors to Ms. Brown, *id.* at ¶ 18(c); seek permission from Ms. Brown if a consumer must be left alone, *id.* at ¶ 18(d), and report any disputes with a consumer to Ms. Brown, *id.* at ¶ 20. Plaintiff was also required to report her hours worked to Ms. Brown. *Id.* at ¶ 23. Ms. Brown supervised Plaintiff to ensure she submitted all proper documentation in order to be paid. *Id.* at ¶ 26. Any requests for time off had to be submitted to and approved by Ms. Brown. *Id.* at ¶ 25. Finally, Ms. Brown carried out Plaintiff's necessary pre-service training, *id.* at ¶¶ 36, 38, and provided Plaintiff with on-the-job training by answering Plaintiff's questions and helping her to understand the different mental needs of the clients, *id.* at ¶ 41. Without question, Ms. Brown satisfies the conditions to be considered an employer under the FLSA, and therefore, is liable for any unpaid wages assessed in this matter.

III.   **DEFENDANT ACTED WILLFULLY AND CANNOT ESTABLISH GOOD FAITH**

An award of liquidated damages equal to the amount of unpaid overtime wages are **mandatory** in FLSA cases absent a showing of good faith. *See* 29 U.S.C. § 260; *Shea v. Galaxie Lumber & Const. Co.*, 152 F.3d 729, 733 (7th Cir. 1998); *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986) (in the FLSA compensation scheme "double damages are the norm, single damages the exception."). An employer, who knew or had reason to know that the FLSA applied, cannot establish good faith as a defense. *Joiner v. Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) (citations omitted). Similarly, if an employee demonstrates that an employer acted willfully in violating the FLSA, the statute of limitations is extended from two (2) years to three (3) years. 29 U.S.C. § 255(b). An employer commits a willful violation if "it knew or *showed reckless disregard for the matter of whether* its conduct was prohibited by the FLSA." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988) (quoting *Brock v. Richland Shoe Co.*, 799 F.2d 80, 83 (1986)) (emphasis in original).

It is well-settled that Courts may consider the results of **DOL investigations as persuasive authority** to determine whether an employer acted in good faith to avoid liquidated damages or acted willfully. Numerous courts have found that a defendant did not act in good faith when it was investigated by the DOL and failed to take any remedial action. *See e.g., Talbott v. Lakeview*

*Ctr., Inc.*, 2010 WL 11557948, at *15-16 (N.D. Fla. Feb. 2, 2010) (defendant acted willfully where DOL informed defendant during investigation that defendant was violating the FLSA and defendant did not further investigate whether the position at issue was exempt); *Scalia v. World Marble & Granite Corp.*, 2021 WL 2481255, at *9 (D. Mass. June 17, 2021) (same); *Scalia v. Valley Hotel, Inc.*, 2020 WL 263012, at *4 (M.D. Pa. Jan. 17, 2020) (defendant did not act in good faith where it failed to take steps to ensure defendant's compliance with the FLSA in the wake of a full DOL investigation); *Brock v. Wackenhut Corp.*, at 1488 ("Given DOL's repeated investigations, [defendant] could neither reasonably conclude that its errors did not constitute violations or that its failure to modify the system that led to such errors was an omission made in good faith."); *Gilchrist v. Schlumberger Tech. Corp.*, 321 F.R.D. 300, 302 (W.D. Tex. 2017) ("prior DOL investigations that resulted in violations of the FLSA also tends to support the element of willfulness").

Moreover, this evidence is not limited to only prior violations. Evidence of subsequent complaints is admissible to establish willfulness in combination with evidence of prior complaints. *See Bingham v. Jefferson Cty., Tex*., 2013 WL 1312563, *17 (E.D. Tex. Mar. 1, 2013), *report and recommendation adopted as modified*, 2013 WL 1312014 (E.D. Tex. Mar. 27, 2013). For example, in *Bingham*, the FLSA violations at issue occurred during September 12, 2008 and September 20, 2008.

23

*Id.* at \*12. Plaintiffs presented evidence that the DOL had investigated defendant for an unrelated FLSA violation eleven (11) years prior. *Id.* at \*13. Then, <u>subsequent to the time period at issue</u>, in November 2011, the DOL found defendant violated the FLSA for events occurring on March 6, 2010 – <u>over a year after the events giving rise to the lawsuit in *Bingham*</u>. *Id.* The Court agreed with Plaintiffs that subsequent DOL findings are relevant to whether defendant willfully violated the FLSA in 2008. Specifically, the court held:

> That the County violated the FLSA before and after the actions underlying this case—and while actively involved in overtime—pay disputes stemming from the actions underlying this case-suggests that it is not unusual for the County to disregard the FLSA. **Accordingly, if a jury found that the County violated the FLSA in 2008, it might consider the 2011 violation as evidence that the Defendants showed reckless disregard for whether their conducted violated the FLSA when they made the decisions underlying this case**.

*Id.* at \*17 (emphasis added).

Here, Pathfinders has been the subject of **five** DOL investigations, spanning from 2007 to 2017. *See* SOF at ¶ 47. Two of those investigations included claims for unpaid overtime compensation. *See id.* Moreover, as explained *supra*, the fifth investigation that began in 2016 involved Plaintiff's **exact same position** and **overlapped with Plaintiff's employment**. *See id.* at ¶¶ 48-49. On January 12, 2017, the DOL held a final conference with Pathfinders and informed the company of its disposition that Pathfinders misclassified its

Personal Support Staff and Supported Living Coaches. *Id.* at ¶¶ 53-54. The DOL also requested payment of back wages. *Id.* at ¶ 54. Pathfinders refused to pay the back wages due and continued to misclassify Plaintiff as an independent contractor. *Id.* at ¶ 55. Given this record, Defendants cannot establish they acted willfully or in good faith. As such, this Court should enter summary judgment in favor of Plaintiff with respect to the three-year statute of limitations and her entitlement to liquidated damages for any overtime wages owed.

<u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests that the Court enter partial summary judgment in her favor finding that: (1) Plaintiff was an employee of Defendants under the FLSA; (2) Plaintiff is entitled to liquidated damages equal to her unpaid overtime; and (3) Defendant's failure to pay Plaintiff overtime wages was willful, such that damages are to be awarded under a three-year statute of limitations, and order any other relief that is just and proper.

Dated:  March 1, 2022                    Respectfully submitted,

<u>**/s/ MATTHEW GUNTER**</u>
MATTHEW GUNTER, Esquire
Florida Bar No. 0077459
Morgan & Morgan, P.A.
20 N. Orange Avenue, Suite 1600
Orlando, FL  32801
Telephone:  (407) 420-1414
Facsimile:  (407) 867-4791
Email: MGunter@forthepeople.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of March, 2022 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing to all parties of record.

<u>**/s/ MATTHEW GUNTER**</u>
Matthew R. Gunter, Esquire