## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JANET MASON,

       Plaintiff,

v.                               Case No: 8:19-cv-307-WFJ-TGW

PATHFINDERS FOR INDEPENDENCE,
INC., a Florida for Profit Corporation; and
BERYL BROWN, individually,

       Defendants.

_____/

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff Janet Mason's Amended

Motion for Partial Summary Judgment, Dkt. 78. Defendants Pathfinders for

Independence, Inc. ("Pathfinders") and Beryl Brown filed an amended response in

opposition, Dkts. 89 & 90. Upon careful consideration, the Court grants Plaintiff's

motion.

## BACKGROUND

Plaintiff is an individual who formerly worked for Defendant Pathfinders, a

Florida corporation that is solely owned and operated by its president and

executive director, Defendant Brown. Dkt. 11 ¶¶ 2, 16; Dkt. 78-1 ¶ 4. Pathfinders

is a licensed Medicaid waiver provider that contracts with Florida's Agency for

Persons with Disabilities ("APD") to offer in-home healthcare and companion services to elderly individuals and adults with disabilities. Dkt. 11 ¶¶ 12−13; Dkt. 78-1 ¶ 2.

From April 2015 to November 2018, Plaintiff worked as both a personal support staff member, *i.e.*, live-in companion, and a support living coach for Pathfinders' consumers. Dkt. 11 ¶ 4; Dkt. 78-1 ¶¶ 4, 6. Ms. Brown personally interviewed and hired Plaintiff to work in these positions. Dkt. 11 ¶ 6; Dkt. 78-1 ¶ 5. As a personal support staff member, Plaintiff lived with consumers and provided them with supportive care and daily supervision, which involved helping with grocery shopping, housekeeping, cooking, and learning daily skills. Dkt. 78-1 ¶ 8. In her position as a support living coach, Plaintiff assisted consumers in, *inter alia*, managing money, grooming, shopping, and developing social skills. *Id.* ¶ 9. Plaintiff earned $1,500 per month as a personal support staff member and $20 per hour as a support living coach. *Id.* ¶ 31.

Plaintiff states that she routinely provided around-the-clock care for Defendants' consumers and often worked eighty-four hours per week. Dkt. 11 ¶¶ 28, 30. Despite regularly working over forty hours per week, Plaintiff claims that Defendants never paid her overtime wages. *Id.* ¶ 32. Instead, Plaintiff contends that Defendants misclassified her as an independent contractor and paid Plaintiff her regular rate of pay for all hours worked. *Id.* ¶¶ 10, 33. In doing so, Plaintiff asserts

2

that Defendants knew they were violating the overtime provisions of the Fair Labor Standards Act ("FLSA"), as the Department of Labor ("DOL") previously determined that the precise positions held by Plaintiff were employee positions subject to the FLSA's protections. Dkt. 78 at 1–2.

Based on the above factual allegations, Plaintiff filed her one-count Amended Complaint, Dkt. 11, against Defendants. In contending that she was Defendants' employee, Plaintiff claims that Defendants willfully violated the FLSA, 29 U.S.C. § 201 *et seq.*, by failing to pay her overtime wages. Dkt. 11 ¶¶ 37–46. As a result, Plaintiff seeks to recover unpaid overtime compensation and liquidated damages. *Id.* ¶ 47. Plaintiff now moves for partial summary judgment against Defendants.

## **LEGAL STANDARD**

A district court should grant summary judgment only when it determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim that might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, in its entirety, could lead a rational trier of fact to find for the nonmovant. *Id.* The moving party bears the burden of demonstrating that no

genuine issue of material fact exists. *Id.*

In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). Upon doing so, the court must determine whether a rational jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the inferences arising from undisputed facts, a court should deny summary judgment. *Allen*, 121 F.3d at 646.

## <u>ANALYSIS</u>

In this FLSA overtime wages case, Plaintiff seeks partial summary judgment against Defendants on three issues: (1) that Plaintiff was Defendants' employee; (2) that Plaintiff is entitled to liquidated damages; and (3) that Defendants' failure to pay Plaintiff overtime wages was willful, such that damages are to be awarded under a three-year statute of limitations as opposed to the typical two-year window provided by the FLSA. Dkt. 78 at 1.

Though Plaintiff frames her first issue for summary judgment as whether she was Defendants' employee, this issue briefed by the parties is more accurately described as whether Plaintiff has proven the two elements of an FLSA overtime wage claim: an employer-employee relationship and coverage under the FLSA.

4

*Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). The parties go beyond the question of whether Plaintiff has satisfied the former element by also extensively addressing the latter. Accordingly, the Court construes Plaintiff's first issue as one seeking summary judgment on both elements of her claim.[1]

The Court begins its analysis with the threshold issue of whether Plaintiff is entitled to summary judgment on her FLSA overtime wages claim.

## I.  Plaintiff's FLSA Claim

The FLSA requires employers who meet its preconditions to provide overtime pay where employees work over forty hours per week. *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. § 207(a)). Pursuant to the FLSA, overtime wages must be paid at a rate of one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours in one work week. 29 U.S.C. § 207(a)(1). To trigger the FLSA's overtime provisions, a plaintiff must show (1) an employer-employee relationship and (2) that she is "covered" by the FLSA. *Josendis*, 662 F.3d at 1298. Independent contractors are not protected by the FLSA and are, therefore, not entitled to overtime wages under the Act. *See Rutherford Food Corp. v. McComb*,

---

[1] The Court further notes that Plaintiff's second and third issues for summary judgment— liquidated damages and Defendants' willfulness—cannot be analyzed without determining whether Plaintiff has satisfied both elements of her FLSA overtime wages claim.

331 U.S. 722, 729 (1947).

## A. Employer-Employee Relationship

Concerning the first element, the FLSA defines "employer" and "employee" broadly. *Josendis*, 662 F.3d at 1298. An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). This includes both the company for which an employee works and "any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis*, 662 F.3d at 1298. In determining whether a corporate officer is an employer, the Eleventh Circuit has considered whether that officer was involved in day-to-day operations of the company and the direct supervision of employees. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1161−62 (11th Cir. 2008). An "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The labels used by the parties to describe their working relationship are not controlling. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013).

Determining whether an employer-employee relationship exists under the FLSA requires a consideration of the "economic realities" of the parties' relationship. *Kaplan v. Code Blue Billing & Coding, Inc.*, 504 F. App'x 831, 834 (11th Cir. 2013). The following six factors guide the economic realities inquiry: (1) the nature and degree of the alleged employer's control over the alleged

employee's work; (2) the alleged employee's opportunity for profit or loss

depending on her managerial skill; (3) the alleged employee's investment in

equipment or materials and employment of other workers; (4) whether the alleged

employee's services required a special skill; (5) the permanency and duration of

the working relationship; and (6) the extent to which the service rendered is an

integral part of the alleged employer's business. *Scantland*, 721 F.3d at 1311−12.

The Eleventh Circuit has explained that the "overarching focus" of the

economic realities test is economic dependence. *Id.* at 1312. In other words, a court

must consider whether the alleged employee is "in business for [herself]" or is

"dependent upon finding employment in the business of others." *Id.* (quoting

*Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301−02 (5th Cir. 1975)). With this

focus in mind, the Court addresses each factor in turn.

### 1.  Control

The first factor considers the nature and degree of the alleged employer's

control over the work performed by the alleged employee. *Id.* at 1313. Stated

another way, this factor is only significant when the facts show that the alleged

employee exerted such control over a meaningful part of the alleged employer's

business that she stood as a separate economic entity. *Id.* (quoting *Usery v. Pilgrim

Equip. Co.*, 527 F.2d 1312−13 (5th Cir. 1976)).

Defendants contend that they did not control Plaintiff's work, as an

employee of the Florida Department of Children and Families was responsible for drafting the support plans[2] that Plaintiff followed when working with consumers. Dkt. 89 at 9−10. However, even if Defendants had no role in drafting these support plans, the undisputed facts show that Defendants exercised significant control over Plaintiff's work in other ways.

Defendants required Plaintiff to adhere to many policies set forth in an employee handbook. Dkt. 78-2 at 23; Dkt. 78-11. For example, Plaintiff had to keep her company-provided cell phone on at all times and promptly answer any phone calls. Dkt. 78-1 ¶ 18(f). Defendants required that Plaintiff remain "on call" twenty-four hours a day for emergency care. Dkt. 78-2 at 12. Additionally, Plaintiff was required to notify Defendants of any consumer medication changes and provide supporting documentation of the same. Dkt. 78-1 ¶ 18(b). If Plaintiff had to leave a consumer unattended, she needed to get Ms. Brown's approval. *Id.* ¶ 18(d). Similarly, Plaintiff had to obtain Ms. Brown's approval prior to sending out any documents on a consumer's behalf. *Id.* ¶ 18(a).

Defendants summarily contend that this handbook—despite being state-mandated—was "not enforced." Dkt. 89 at 11; Dkt. 78-2 at 23. However, at her deposition, Ms. Brown confirmed the accuracy of Defendants' policies as listed in

---

[2] These support plans documented a consumer's "unique and specific needs" and the tasks an assigned caregiver needed to accomplish to meet those needs. Dkt. 90-4 at 4−9.

the handbook. *See* Dkt. 78-2 at 12−14.

Moreover, Defendants required Plaintiff to call Ms. Brown on specified days between 10:00 a.m. and 11:00 a.m. to report the hours that she had worked, and Plaintiff was required to leave a voicemail message if Ms. Brown did not answer. Dkt. 78-1 ¶¶ 22−23; Dkt. 78-14. Plaintiff also had to timely submit to Defendants multiple monthly reports, including intervention logs, incident reports, supported living progress calendars, and reports on medical treatment visits. Dkt. 78-1 ¶ 19; Dkt. 78-2 at 13. There were additional reports that Plaintiff had to submit to Defendants quarterly and annually. Dkt. 78-1 ¶ 19; Dkt. 78-2 at 14. If Plaintiff experienced a dispute with a consumer, she was required to notify Ms. Brown. Dkt. 78-1 ¶ 20; Dkt. 78-2 at 16. If Plaintiff needed to take time off from work, she was to notify Defendants in advance so they could find another caregiver to cover her shifts. Dkt. 78-2 at 21; Dkt. 90-5 at 4.

Defendants also exercised significant control over the hiring and firing process as it pertained to Plaintiff's positions within Pathfinders. Plaintiff was hired to work as a Pathfinders caregiver after being interviewed by Ms. Brown. Though a potential consumer and his or her family had the "final say" in whether Plaintiff would work with the consumer, Ms. Brown facilitated the pairing process. Dkt. 78-1 ¶ 27; Dkt. 78-2 at 27. Ms. Brown made the preliminary determination of whether Plaintiff and a consumer would make a good match, upon which she

would schedule and attend an initial interview with Plaintiff and that consumer. Dkt. 78-1 ¶ 27; Dkt. 78-2 at 19−20. Though Defendants contend that the consumers controlled the power to fire Plaintiff, Dkt. 89 at 9, this is not an accurate description of the termination process. If a consumer no longer wished to be paired with Plaintiff, Defendants would take Plaintiff off the consumer's case and pair her with a new consumer. Dkt. 78-1 ¶ 28. The consumer did not have the power to terminate Plaintiff's positions within Pathfinders. *See id.* Defendants—not consumers—controlled the decision of whether to fire Plaintiff from the company.

Viewing the facts in the light most favorable to Defendants as non-movants, the Court finds that Defendants exercised significant control over Plaintiff such that she did not stand as a separate economic entity. This factor weighs in favor of employee status.

### 2.  Opportunity for Profit or Loss

The second factor of the economic realities test contemplates the alleged employee's opportunity for profit or loss depending upon the exercise of her managerial skill. *Scantland*, 721 F.3d at 1316. Taken in the light most favorable to Defendants, the facts demonstrate that Plaintiff's opportunity for profit or loss depended primarily upon Defendants' pairing of Plaintiff with consumers and Plaintiff's exercise of her skill as a caretaker, not her managerial skill.

Plaintiff did not have a say in her wages, as Defendants set rates of pay

based on a reimbursement maximum dictated by APD. *See* Dkt. 78-19 at 4; Dkt. 78-2 at 7. Moreover, with Ms. Brown facilitating the pairing process between Plaintiff and consumers, Defendants controlled Plaintiff's opportunities to obtain work with new consumers. Plaintiff had no opportunity for additional profit through the exercise of her managerial skill under such circumstances. *See Solis v. A+ Nursetemps, Inc.*, No. 5:07-cv-182-Oc-10PRL, 2013 WL 1395863, at *7 (M.D. Fla. Apr. 5, 2013) (finding that nurses who were paid by the hour did not have opportunities for additional profit or loss through the exercise of their managerial skill).

Unlike a typical independent contractor, Plaintiff had no opportunity to bid for particular jobs at her desired rate while working with Defendants. With no meaningful opportunity to realize profit or loss through exercising her managerial skill, this factor heavily favors employee status.

### 3.  Investment in Equipment or Materials and Hiring of Workers

The third factor considers whether the alleged employee invested in equipment or materials or employed other workers. *Scantland*, 721 F.3d at 1317. This factor contemplates whether the alleged employee's work-related expenditures detracted from her economic dependence on the alleged employer. *Hughes v. Fam. Life Care, Inc.*, 117 F. Supp. 3d 1365, 1372 (N.D. Fla. 2015).

Neither party asserts that Plaintiff invested in equipment or materials or

hired additional workers while working with Defendants. Notably, though, Defendants also did not provide Plaintiff with equipment or materials for her work in consumers' homes. This factor does not point toward employee status or independent contractor status in any meaningful way.

### 4. Special Skill

The fourth factor asks whether the service provided by the alleged employee required a special skill. *Scantland*, 721 F.3d at 1318. Specifically, this Court must consider whether Plaintiff was dependent upon Defendants to equip her with the skills needed to perform her work. *Id.* "[E]ven if an individual has specialized skills, that is not indicative of independent contractor status where the individual does not use those skills in an independent fashion." *Molina v. S. Fla. Express Bankserv, Inc.*, 420 F. Supp. 2d 1276, 1286 (M.D. Fla. 2006).

Prior to working with Defendants, Plaintiff had no training as a home healthcare provider. Dkt. 78-1 ¶ 35. Plaintiff was not a licensed independent caregiver, nor did she need to be to work in her positions. *See id.* ¶ 10. Defendants provided Plaintiff with multiple hours of pre-service training, orientation, and in-service training, all of which were required by APD. *Id.* ¶¶ 37, 39; Dkt. 78-2 at 10−12. Defendants offered opportunities to obtain required certifications in first aid and cardiopulmonary resuscitation ("CPR") at no cost to Plaintiff, though she was permitted to complete this training elsewhere. Dkt. 78-2 at 12. Once Plaintiff

began working in her positions at Pathfinders, Ms. Brown answered her on-the-job questions and helped her understand consumers' various mental needs. *See* Dkt. 78-1 ¶ 41; Dkt. 78-4 at 5.

While Plaintiff's positions required some training and skill, such as CPR certification, her work as an unlicensed caretaker is not the type of specialty job that members of the public typically seek out for individual engagements. *See Solis*, 2013 WL 1395863, at *7 (finding that nurses do not have the type of specialized skill and training that favors independent contractor status). In fact, as an unlicensed caretaker, she could only work as a caregiver through a state-certified company like Pathfinders. Dkt. 78-1 ¶ 10. Considering these facts, this factor suggests employee status.

### 5. Permanency and Duration

The fifth factor of permanency and duration considers the regularity and length of the parties' working relationship. *Scantland*, 721 F.3d at 1318. The parties agree that Plaintiff consistently worked in her positions at Pathfinders for roughly three-and-a-half years. Dkt. 78-1 ¶ 42; Dkt. 89 at 12. This factor favors employee status.

### 6. Integral Part of Alleged Employer's Business

Finally, the sixth factor asks whether the alleged employee's service was an integral part of the alleged employer's business. *Scantland*, 721 F.3d at 1319. As a

home healthcare company, Defendants cannot reasonably dispute that Plaintiff's services as a support living coach and personal support staff member were integral parts of Defendants' business. Ms. Brown acknowledged that workers in those positions provide the primary service offered by Pathfinders. Dkt. 78-2 at 18. This factor indicates employee status.

### 7. Weighing the Six Factors

In considering the overarching principle of economic dependence, an analysis of the six economic realities factors leads this Court to find that Plaintiff was an employee of Defendants. While no single factor is dispositive, not one factor points toward independent contractor status. Given the facts detailed above, a common-sense consideration of the parties' working relationship also suggests an employer-employee relationship.

While not binding authority, the Court further notes that the DOL reached the same conclusion after conducting a full investigation between 2014 and 2016. Dkt. 78-19 at 10–11. There, the DOL determined that Defendants had misclassified the precise positions held by Plaintiff as independent contractor positions. *Id.*

This employer-employee relationship exists not only between Plaintiff and Pathfinders, but Plaintiff and Ms. Brown. As detailed above, Ms. Brown—the executive director, president, and sole owner of Pathfinders—was involved in

hiring and firing, caregiver placement, on-the-job training, and other supervisory aspects concerning caregivers like Plaintiff. The undisputed facts show that Ms. Brown was involved in her company's day-to-day operations and the supervision of employees such that she is jointly and severally liable for any FLSA violations. *See Alvarez Perez*, 515 F.3d at 1161−62. Accordingly, Plaintiff has established an employer-employee relationship with respect to both Defendants.

## B. Coverage

In addition to establishing an employer-employee relationship, Plaintiff must prove she is covered by the FLSA to warrant summary judgment on her overtime wages claim. Typically, this element is proven by showing one of two types of coverage: individual coverage or enterprise coverage. *Josendis*, 662 F.3d at 1298−99. An employee may claim individual coverage if she "regularly and directly participates in the actual movement of persons or things in interstate commerce." *Id.* at 1298 (internal quotations omitted). Enterprise coverage may be shown if an employee "is employed in an enterprise engaged in commerce or in the production of goods for commerce." *Id.* at 1298−99 (internal quotations omitted). Here, Plaintiff asserts individual coverage. Dkt. 78 at 4−5.

To prove individual coverage, Plaintiff must show that she was "(1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 U.S.C.

§ 207(a)(1)). In contending that she was engaged in commerce, Plaintiff points to Congress's finding that "the employment of persons in domestic service in households affects commerce." Dkt. 78 at 4 (citing 29 U.S.C. § 202(a)). In coming to this conclusion, Congress noted "that employees in domestic service employment handle goods such as soaps, mops, detergents, and vacuum cleaners that have moved in or were produced for interstate commerce" and "free members of the household to themselves engage in activities in interstate commerce." 29 C.F.R. § 552.99. "Domestic service employment" is defined as:

> services of a household nature performed by an employee in or about a private home (permanent or temporary). The term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, *caretakers*, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use.

*Id.* § 552.3 (emphasis added).

Plaintiff's work as a caretaker required her to help consumers with activities such as housekeeping, grocery shopping, and money management. In carrying out such tasks, Plaintiff certainly used at least some goods "moved in or produced for" interstate commerce and helped to "free members of the household" to engage in activities in interstate commerce. *See* 29 C.F.R. § 552.99.

In any event, the Court finds that the FLSA's overtime provisions directly apply to Plaintiff through § 207(l). This section explicitly states that "any employee in domestic service in one or more households" must receive overtime

pay.[3] 29 U.S.C. § 207(l). While the parties oddly do not discuss § 207(l), other courts have found that employees of third-party services who perform household services in private homes are directly covered by the FLSA through this section. *See Murphy v. AllStaff Homecare, LLC*, No. 16-cv-2370-WJM-MEH, 2019 WL 4645440, at *4 (D. Co. Sept. 24, 2019); *Switala v. Rosenstiel*, No. 17-21872-Civ-Scola, 2017 WL 7792713, at *4 (S.D. Fla. Oct. 3, 2017); *Arenas v. Truself Endeavor Corp.*, No. 12-C-5754, 2013 WL 271676, at *3 (N.D. Ill. Jan. 23, 2013); *Peterson v. Snodgrass*, 683 F. Supp. 2d 1107, 1121 (D. Ore. 2010); *Hanley v. Hand'N Heart, L.L.C.*, Nos. 4:06-cv-71 & 4:06-cv-143, 2007 WL 201088, at *5 (E.D. Va. Jan. 22, 2007).

Viewing the facts in the light most favorable to Defendants, there is no genuine issue of material fact that Plaintiff is covered by the FLSA. Plaintiff has therefore proven both elements of her FLSA overtime wages claim, and she is entitled to summary judgment.

## II.  Liquidated Damages & Willfulness

Plaintiff also seeks summary judgment on the issues of liquidated damages and Defendants' willfulness in violating the FLSA. These two issues are

---

[3] While certain caretakers were previously exempt from the FLSA's overtime provisions under the DOL's "companionship exemption," 40 Fed. Reg. 7404, 7407 (Feb. 20, 1975), the DOL amended its regulations to exclude from this exemption employees of *third-party employers* engaged in companionship services, 29 C.F.R. § 552.109(a) (effective Jan. 1, 2015). This change went into effect prior to Plaintiff's employment by Defendants, who are undoubtedly third-party employers. Accordingly, this exemption does not apply.

intertwined, so the Court examines them together.

Pursuant to § 216(b), "[a]n employer who violates the FLSA's overtime provisions is liable to the employee for the employee's unpaid overtime compensation and for liquidated damages equal to that unpaid overtime compensation." *Meeks v. Pasco Cnty. Sheriff*, 688 F. App'x 714, 717 (11th Cir. 2017). In its discretion, a court may decline to award liquidated damages upon the employer's showing that it acted in good faith and had reasonable grounds for believing it was not in violation of the FLSA. *Id.* (citing 29 U.S.C. § 260). An employer who knew or had reason to know that the FLSA applied cannot establish a good faith defense. *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987).

While a liquidated damages remedy is ordinarily subject to a two-year statute of limitations, that window is extended to three years where the employee shows that the employer's violation of the FLSA was willful. 29 U.S.C. § 255(a). A violation of the FLSA may be considered willful when an employee "simply disregarded the possibility that it might be violating the FLSA." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1324 (11th Cir. 2007). Thus, even when an employer did not knowingly violate the FLSA, the three-year statute of limitations still applies when that employer showed reckless disregard. *Id.*; *Alvarez Perez*, 515 F.3d at 1162−63.

18

Here, Defendants offer no facts to support a good faith defense. In fact, Defendants' response to Plaintiff's summary judgment motion makes no mention of the liquidated damages issue at all. The underlying facts reveal that Defendants had reason to know that they were in violation of the FLSA's overtime provisions.

From June 2014 to August 2016, which was a period that overlapped with Plaintiff's employment, the DOL conducted a full investigation into Defendants' classification of workers holding the same caretaker positions as Plaintiff. Dkt. 78-19 at 3, 5. The DOL concluded that Defendants' personal support staff members and support living coaches were employees, not independent contractors. *Id.* at 5–6, 10–13. The DOL requested that Defendants pay twelve employees $44,579.17 in overtime back pay. *Id.* at 15. Defendants disagreed with the DOL's conclusion that they had misclassified the workers and refused to pay the requested back pay. *Id.* at 12–16.

This was not the first time that the DOL investigated Defendants' possible violations of the FLSA's overtime provisions. In 2007, the DOL conducted a full investigation from which it concluded that three workers were due a total of $1,454.66 in overtime wages. *Id.* at 4. Defendants agreed to pay the requested back wages in that instance. *Id.*

Considering these two investigations, Defendants had reason to know that they were violating the FLSA by failing to pay Plaintiff overtime wages.

19

Defendants failed to ensure their compliance with the FLSA after the conclusion of the DOL's second full investigation in 2016. In similar circumstances, other courts have found such failures by employers to be willful. *See Talbott v. Lakeview Ctr., Inc.*, No. 3:06-cv-378-MCR-MD, 2010 WL 11557948, at *15 (N.D. Fla. Feb. 2, 2010) (finding that defendant acted willfully in adopting a "head-in-the-sand" attitude after being twice informed by the DOL that it was in violation of the FLSA's overtime provisions); *Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F. Supp. 3d 513, 531 (E.D. Pa. 2021) (determining that defendant acted willfully in continuing to violate the FLSA's overtime provisions after the DOL found violations in three separate investigations); *Rojas v. Splendor Landscape Design Ltd.*, 268 F. Supp. 3d 405, 411 (E.D.N.Y. 2017) ("Having been advised by the DOL of their violation of the FLSA—and in the first investigation, being ordered to pay back wages—Defendants were clearly on notice that the failure to pay overtime wages violated the FLSA. Yet, Defendants continued to commit the same violation.").

Considering these facts and the lack of a substantive response by Defendants on this issue, there is no genuine issue of material fact regarding whether liquidated damages are warranted. No reasonable jury could find that Defendants acted in good faith in continuing to violate the FLSA's overtime provisions after being twice informed of such violations. Based on these undisputed facts, it is clear

that Defendants acted willfully by recklessly disregarding whether they were violating the FLSA. This Court finds that Plaintiff is entitled to summary judgment on the issues of liquidated damages and Defendants' willfulness.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment.

**DONE AND ORDERED** at Tampa, Florida, on April 12, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**<u>COPIES FURNISHED TO:</u>**
Counsel of Record